# WILLIAM H. GREEN
## vs.
# STATE OF MARYLAND.

*Public officials: salaries; constitutional limitations; sheriffs;*
*fees and fines; other moneys collected; account-*
*able to State. Interest. Courts and*
*Legislature: func-*
*sions of—.*

Under the Constitution of Maryland, public officials can re-
ceive, as annual compensation, no more than $3,000.00, except-
ing such other sum or sums for expenses as may be allowed by
law, unless otherwise specially provided by the Constitution.

pp. 291-292

The purpose of Chapter 300 of the Acts of 1874, allowing the
Sheriff of Baltimore City four dollars per day for every day
that he attends Court by person or by deputy, etc., to be paid
out of the moneys received as fees or fines in his office, was to
furnish the necessary revenue for his office expenses, and not
meant to increase his own compensation.          p. 293

By the terms of the Constitution, sheriffs are to perform
such duties as were or might be fixed by law; and while the
Legislature may fix and provide additional duties to be per-
formed by the sheriffs, it can not provide additional compensa-
tion therefor, over and above the constitutional limitation.

p. 295

To attend the courts in person or by deputy is a common law
duty of sheriffs.                                   p. 296

Commissions collected by a sheriff, based on fees and costs
due the State's Attorney and clerks of Court, must be accounted
for by him, and all balance received, over and above his salary,
as limited by the Constitution, should be turned over to the
State.                                              p. 296

Where money is improperly and illegally withheld and re-
tained, interest is recoverable as of right.        p. 297

Upon all sums which a sheriff realizes from fees or other moneys collected by him as sheriff, over and above his actual salary of $3,000.00 and the expenses allowed him by law, the State is entitled to receive interest as of right.          p. 297

Where a hardship results from the application of well established rules of law, it is for the Legislature to provide a remedy, and not for the courts.                          p. 298

*Decided January 14th, 1914.*

Appeal from the Baltimore City Court.  (DAWKINS, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Charles R. Schirm* and *J. Cookman Boyd,* for the appellant.

*Edgar Allan Poe,* the Attorney General, and *Clarence W. Perkins,* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This case is presented here, for review for the second time. On the former appeal at the January Term, 1913, of this Court, and reported in 120 Md. 681, we reversed a judgment in favor of the plaintiff for the sum of $15,177.20 and awarded a new trial.  The appeal now before us is by the defendant, from a judgment rendered against him on the second trial, in the Baltimore City Court, on the 23rd day of June, 1913, for the sum of $27,553.98, with interest and costs.

The case was submitted to the Court below, sitting as a jury, upon an "Agreed Statement of Facts," in lieu of testimony.

The legal propositions now before us are presented by a single bill of exception, which is to the action of the Court below in its rulings upon eleven prayers.

The Court below granted the five prayers offered by the plaintiff, and rejected the six prayers presented by the defend-

ant, and the action of the Court in this regard forms the basis of the defendant's appeal.

The agreed statement of facts, upon which the rulings were had, are substantially as follows:

1. That the amount of fines collected by the defendant as sheriff of Baltimore City from the 30th day of November, 1903, to the 7th day of December, 1905, and not accounted for and paid over by him either to the State of Maryland, the Mayor and City Council of Baltimore, incorporated dispensaries of Baltimore City, or to informers, amounts to $8,250.10.

2. That in addition to the above amount the defendant as sheriff also withheld from the State of Maryland, relying upon the provisions of Chapter 300 of the Acts of 1874, for Court attendance from the 30th day of November, 1903, to the 7th day of December, 1905, the sum of $10,176, which sum he retained out of the sum of $10,823.20 paid him by the clerk of the Court of Common Pleas on account of licenses issued by said clerk. That the defendant attended in person or by deputy upon the various law courts of Baltimore City a sufficient number of days to make up the sum of $10,176, based upon the charge of $4 per day per court for each day's attendance.

3. That in addition to the two above mentioned sums the defendant collected as sheriff of Baltimore City from the 30th day of November, 1903, to the 7th day of December, 1905, and failed to account for to the State, commissions at 6 per cent. from the State's Attorney for Baltimore City and from the clerk of the Criminal Court of Baltimore City based on fees and costs due said State's Attorney for Baltimore City and said clerk of the Criminal Court of Baltimore City, and collected by the defendant as sheriff, amounting to $664.86.

4. In the return made by the defendant to the State Comptroller, the defendant has been allowed for all expenses of his office actually incurred by him, including his own salary of $3,000 per year.

On the former appeal we held, that the amount of fines collected, and improperly retained by the defendant, as sheriff of Baltimore City, as informers' fees, to wit, the sum of $8,250.10, as stated in "the Agreement" belonged to the State, and should have been included by the defendant as receipts of his office, in his accounting to the State.

The reasons for this conclusion are fully and clearly stated by Judge Pattison in an opinion on the former appeal, reported in 120 Md. 681, and it would answer no good purpose to repeat or incorporate them here.

The plaintiff's first prayer properly instructed the Court as to the amount retained as informers' fees. It was said on the former appeal, that it was a correct prayer and we held, its refusal on a similar state of facts, was reversible error. *State* v. *Green,* 120 Md. 690.

The appellant, the defendant below, however contends, that the sum of $10,176 withheld by him, as set forth in paragraph 2, of "the Agreed Statement of Facts" was properly retained by him, for attendance upon the various law courts of Baltimore City, at $4 per day, from the 30th day of November, 1903, to the 7th day of December, 1905, under the provisions of Chapter 300 of the Acts of 1874.

The Statute relied upon is as follows: "The sheriff of Baltimore City shall be allowed four dollars per day for every day he shall attend, either in person or by deputy, in the Superior Court of Baltimore City, and in the Court of Common Pleas, and in the Baltimore City Court, and in the Criminal Court of Baltimore, to be paid to him out of the money received as fees or fines in the sheriff's office, belonging to the State."

It must be borne in mind at the outset in considering this statute, that we are here dealing with the salary of a constitutional officer, whose compensation shall not exceed more than three thousand dollars a year, and it is admitted that the defendant in this case, in his return to the state comptroller, has been allowed for all the expenses of his office

actually incurred, and has been paid his own salary of $3,000 per year.

In other words, the sum here claimed if allowed the defendant would clearly be compensation in excess of the sum of three thousand dollars, and in violation of sec. 1 of Art. 15 of the Constitution.

This provision of the Constitution has been before this Court for consideration in a number of cases, and in each case the claim was denied and disallowed. *Banks* v. *State,* 60 Md. 305; *Goldsborough* v. *Lloyd,* 86 Md. 376; *Vansant* v. *State,* 96 Md. 125; *State* v. *Green,* 120 Md. 690; *Cecil & Beasley* v. *Co. Commrs.,* 121 Md. 696.

In *Banks* v. *State, supra,* JUDGE ALVEY said, this question is clearly answered by a simple collation of the provisions of the Constitution, and of the statute law of the State upon this subject. He then cited the various acts bearing thereon, and held that the commissions received in that case, over and above the salary and expenses of the office, were required to be paid into the State Treasury. It was further held, that the commissions in question were received for the discharge of official duties and formed part of the emoluments of the office held by the appellant. If in the language of the Constitution the money came into his hands "in any way growing out of, or connected with his office" he was required to account for it as part of the income or receipts of the office.

In the recent case of *Cecil and Beasley* v. *The Commissioners of Anne Arundel Co.,* 121 Md. 696, JUDGE STOCKBRIDGE in delivering the opinion of the Court said: "It is immaterial whether the amount of the sheriff's compensation be payable as a salary from the fees of his office, or by the County Commissioners. It was in either event, compensation to him for services performed in the discharge of the duties of his office, and was the maximum amount which the Legislature had the power to provide. Having granted this salary, it was incompetent to add to it fees for the performance of official duties, and which fees, if paid, it would then become the duty

of the sheriff to account for, to the comptroller and pay over to the treasurer of the state."

In *State* v. *Green,* 120 Md. 688 (the former appeal), JUDGE PATTISON said: Article 15, section 1 of the Constitution of this State in stating or defining the duties thereby imposed upon the officers therein named, of whom the sheriff is one, provides that each of said officers when the amount received by him for the year shall exceed the sum which he is by law entitled to retain as his salary or compensation for the discharge of his duties and for the expenses of his office, shall yearly pay over to the treasurer of the state the amount of such excess subject to such disposition thereof as the General Assembly may direct; * * * and no person holding any office created by or existing under this Constitution or laws of this State, shall receive more than $3,000 a year as compensation for the discharge of his official duties except in cases specially provided in this Constitution.

It is too clear for question, that if the object and purpose of the Act of 1874, Chapter 300, is to be construed as increasing the compensation of the sheriff of Baltimore City over and above the salary of $3,000, it would be compensation in excess of the constitutional limitation and its provisions would be invalid and void, as in conflict, and in violation of Article 15, section 1 of the Constitution.

In our opinion, the purpose of this Act (1874), was not to increase the maximum compensation of $3,000 allowed the defendant as salary, but it was to provide the necessary revenue to meet the expenses of his office, and to secure to him a salary of $3,000 per annum, as provided by the Constitution.

By section 42 of Article 87 of the Code, it is provided "that all fines, forfeitures, penalties and costs imposed as aforesaid are to be paid to the sheriff, who shall pay the same, except the costs, to the treasurer on or before the 10th of November, in each year, and the costs to the person entitled to receive them, provided when any person is entitled to any

part of the fine, forfeiture or penalty as informer or otherwise, the same shall be paid by said sheriff to such person."

Under the Act of 1874, the sheriff may use any part of the fines as well as fees belonging to the State, for the expenses of his office, or in payment of his own salary. In other words, as stated by the State in its brief, this statute authorized him to charge against such fines the *per diem* charge of $4 a day to the extent and in so far, that such a charge is necessary to enable the sheriff to meet his office expenses, and to secure to himself a salary of $3,000 per annum.

This, we think, is a reasonable and proper construction of the statute now under discussion. It not only makes clear the legislative intent and purpose, but it at the same time removes all constitutional objection to its validity.

But the appellant, in his brief, contends "that it was not the common law duty of the sheriff to attend the law courts, in person or by deputy, that there is no English statute in force in Maryland making it his duty, and that it was not made his official duty by the Constitution or a statute of the State."

The Constitution of the State, Article 4, section 44, provides, there shall be elected in each county, and in the City of Baltimore one person * * * to the office of sheriff. He shall * * * exercise such powers and perform such duties as now are or may hereafter be fixed by law.

In *Beasley* v. *Ridout,* 94 Md. 648, this Court quoted the language of CHIEF JUDGE LeGRAND, in *Baltimore* v. *State,* 15 Md. 376, and said, it was applicable to the office of sheriff and his duties, under the present Constitution of the State. The language adopted is as follows: "The Constitution which mentions the office and provides for its filling, does not specify or describe the powers or duties of the sheriff. These are left to the common law, and the Acts of Assembly. * * * There is nothing to prohibit the Legislature from adding to or diminishing his duties, provided those added be not in

conflict with his office as sheriff." *M. & C. C. of Baltimore* v. *Board of Police,* 15 Md. 376; *State* v. *Mayhew,* 2 Gill, 501; *Baltimore* v. *State,* 15 Md. 400; *South* v. *State,* 18 Howard 402.

While it is clear that the Legislature may fix and prescribe by law additional duties to be performed by the sheriff, it is quite certain that it cannot provide additional compensation for the exercise and performance of those duties, so as the sheriff will receive a salary or compensation in excess of the constitutional limitation of $3,000.

The distinction which the appellant seeks to draw, between the powers and official duties of the sheriff if carried to its logical conclusion would not only defeat and nullify the plain constitutional provision referred to, but would result in holding that it was not one of the official duties of the sheriff, to attend in person, or by deputy, the law courts of the city, and counties of the State. The contention as applicable to the Act of 1874, Chapter 300, is thus stated in the brief: "This Act did not, as a result of this constitutional provision, fix it as one of the duties of the sheriff to attend the law courts, but carefully avoided doing so. The Act says "for every day that he shall, in person or by deputy, attend, &c., &c.," he shall have $4 per day per court. It does not say that he must attend the courts. The Act is not mandatory, but optional. It fixes a *per diem* as an incentive to exercise a power for the convenience of the courts, but does not make it one of his official duties, and thus provides a means of increasing the inadequate compensation of the sheriff of Baltimore City, without resorting to a constitutional amendment."

It has never been disputed, in this State, that it was the official duty of the sheriff, to attend in person, or by deputy, the sessions of the law courts of his county and in the City of Baltimore.

It is difficult to see how the work of the courts could be properly and expeditiously conducted in the absence of an officer, clothed with the power and authority of the sheriff.

It was the duty of the sheriff at common law to attend the courts, in person, or by deputy. *Blackstone's Commentaries,* Vol. 1, star page 345, and it has always been regarded as one of the official duties of his office to so attend the sessions of the law courts of the State.

In *Beasley* v. *Ridout, supra,* this Court said, under the present Constitution, the powers and duties which the sheriff is to exercise and perform, are not such alone as were then determined by the common law, but were those thereafter fixed by law, whether the effect of such law was to repeal, enlarge, or limit those powers. The language could not have been more explicit or plainer in meaning if the Constitution said: "The powers and duties of sheriffs shall be such as now are, or may hereafter be conferred and prescribed by legislative enactment."

The commission collected by the defendant, based on fees and costs due the State's Attorney and clerk of the Criminal Court of Baltimore and retained by the defendant, as set out in the third paragraph of the Agreed Statement of Facts, is strictly analogous to, and falls directly within, the principle, applicable to the other amounts retained by him and were in excess of his salary. They were commissions legally charged and received by him as sheriff for collecting officers' fees, and were authorized by section 28 of Article 36 of the Code (Bagby's), and must be turned over to the State by him. *Banks* v. *State, supra; State* v. *Green, supra.*

The next and last question is that raised by the plaintiff's fifth prayer in relation to the recovery of interest on the money withheld by the sheriff. This prayer is as follows: The Court sitting as a jury is instructed that it must allow interest at the rate of 6 per cent. per annum from the first day of February, 1906, down to the date of the verdict on such amount, if any, as it shall find that the defendant failed to account for, and pay over to the State.

This prayer is based upon the theory that the plaintiff was entitled to recover interest upon the money retained by

the defendant in excess of his salary, as a matter of right and its allowance should not be left to the discretion of the Court, sitting as a jury.

We have examined this question with some care, and the authorities cited by the appellant in his brief, but have been unable to find legal principle which would take it out of the well settled rule, applicable to similar cases. The interest, it is true, is a large sum, amounting to $8,463.03, and it may impose a hardship upon the appellant under the circumstances as stated in his brief, to be required to pay it; but to relieve him under the facts of this case, would be establishing a dangerous precedent.

The authorities, in an unbroken line concur in holding that where money is improperly and unlawfully withheld and retained as was done in this case, that interest is recoverable as of right. *Newson* v. *Douglas,* 7 H. & J. 418; *Fridge* v. *State,* 3 G. & J. 117; *Comegys* v. *State,* 10 G. & J. 186; *Banks* v. *State,* 60 Md. 305; *Gott* v. *Barnard,* 44 Md. 319; *McShane* v. *Howard Bank,* 73 Md. 135; *Pope* v. *Warehouse,* 103 Md. 16; *Adams* v. *Matthews,* 84 Md. 143; *Havre de Grace* v. *Fahey,* 108 Md. 540.

Under Article 15, section 1, of the Constitution, it will be seen the defendant was required to pay over annually to the treasurer of the state, the amount of any excess, when the amount received by him exceeded the sum which he was by law, entitled to retain, as his salary or compensation for the discharge of his duties, and for the expenses of his office. It is distinctly provided if any of such officers' shall fail to comply therewith for the period of thirty days after the expiration of each and every year of his office, such officer shall be deemed to have vacated his office * * * and such officer shall be subject to suit by the State for the amount that ought to be paid into the treasury, and no person holding any office, created by or existing under the Constitution or laws of this State * * * shall receive more than three thousand dollars a year, as a compensation for the discharge of his

official duties, except in cases specially provided in this Constitution.

The withholding of this money by the defendant in clear violation of this constitutional mandate, was not only unlawful, but as he had and retained the use of it, we think the State is entitled to recover interest as a matter of right.

As was said by this Court, in *Demuth* v. *Old Town Bank*, 85 Md. 320, a rigid adherence to fundamental principles at all times, and a stern insensibility tothe results which an unvarying enforcement of those principles may occasionally entail, are the surest, if not the only, means by which stability and certainty in the administration of the law may be secured.

If, therefore, a hardship results to the defendant in this case from the application of the well-established rule of law, as to the recovery and payment of interest upon the funds retained by him, belonging to the State, it is for the Legislature by appropriate enactment and not for the courts to provide a remedy.

In *Lovejoy* v. *Ireland*, 17 Md. 526, JUDGE TUCK said, inconvenience may sometimes result to parties in the particular instance, but general rules framed to protect rights and to promote regularity of judicial proceedings should not be dispensed with by the courts to meet the exigencies of special cases. *Brown* v. *Bragunier*, 79 Md. 239.

The Court therefore committed no error in granting the plaintiff's fifth prayer, which instructed the Court, sitting as a jury, as to the recovery of interest.

For the reasons stated, the Court was entirely right in granting the prayers offered by the plaintiff, and in refusing those offered by the defendant. The judgment appealed from will therefore be affirmed.

*Judgment affirmed, with costs.*